UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JUAN CARLOS MOLINA,

                Plaintiff,                    **MEMORANDUM AND ORDER**

                v.                                    21-CV-3144 (RPK) (JMW)

LETITIA JAMES, *State of New York*;
ANNE DONNELLY; ESTATE OF
ROSALIND & JOSEPH GURWIN; and
JOHN DOE-FEDERAL INSURANCE
COMPANY/CHUBB GROUP, *President/CEO*,

                Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      *Pro se* plaintiff Juan Carlos Molina brings this action under 42 U.S.C. § 1983, 18 U.S.C. § 641, and state law against the State of New York ("New York"), Nassau County, Letitia James, Anne Donnelly, the Estate of Rosalind & Joseph Gurwin ("Gurwin Estate"), and the President of the Federal Insurance Company/Chubb Group ("Federal").[1] *See* Am. Compl. 1-3 (Dkt. #7); Resp. to James Mot. to Dismiss 1-2 (Dkt. #15); Resp. to Donnelly Mot. to Dismiss 1-2 (Dkt. #19). Plaintiff alleges that defendants deprived him of his constitutional rights during a state criminal prosecution and a civil action that concluded almost forty years ago. *See, e.g.*, Pl.'s Aff. in Supp. ¶¶ 5-9 (Dkt. #7-4); Mem. in Supp. of Compl. 10-12 (Dkt. #7-4). Plaintiff also invokes this Court's habeas corpus jurisdiction under 28 U.S.C. § 2254. *See* Resp. to Donnelly Mot. to

---

[1] Plaintiff originally sued Madeline Singas, the former Nassau County District Attorney, in her official capacity. During the pendency of this action, Anne Donnelly became the Nassau County District Attorney. Pursuant to Federal Rule of Civil Procedure 25(d), Donnelly is substituted for Singas. The Clerk of Court is respectfully directed to amend the caption to reflect that substitution.

Plaintiff sometimes refers to the Gurwin Estate in conjunction with an entity that he calls the "Jewish Geriatric Center of Long Island." *See, e.g.*, Pl.'s Mot. for Summ. J. 1. Because plaintiff does not appear to bring independent claims against the Jewish Geriatric Center, and for the sake of simplicity, this Order uses the name "Gurwin Estate" for that defendant.

1

Dismiss 7; Pl.'s Mot. for Summ. J. (Dkt. #23). Defendants James, Donnelly, and Federal have moved to dismiss the complaint. *See* James Mot. to Dismiss (Dkt. #12); Donnelly Mot. to Dismiss (Dkt. #17); Federal Mot. to Dismiss (Dkt. #22). For the reasons stated below, the motions to dismiss are granted. The Court also *sua sponte* dismisses all claims against the Gurwin Estate and plaintiff's claim under 18 U.S.C. § 641 as to all defendants.

## BACKGROUND

The following facts are drawn from the complaint and plaintiff's opposition papers to defendants' motions to dismiss,[2] *see Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), and are assumed true for the purposes of this order.

Plaintiff is a native Spanish-speaker from Argentina who came to the United States in 1970. Am. Aff. ¶ 2 (Dkt. #9). That year, plaintiff started working as a bookkeeper for a company called Prestex, Inc. ("Prestex") in Manhattan. *Id.* ¶ 6. In 1972, Prestex was sold to Joseph Gurwin. *See id.* ¶¶ 9-10.

In 1981, an arsonist allegedly started a fire at Prestex's inventory offices that damaged the company's financial records. *See id.* ¶ 11. Plaintiff was assigned to reconstruct some of those records. *See ibid.* Because of plaintiff's work on the records, "unknown criminal persons" allegedly threatened plaintiff, "left a severed raccoon head and a Molotov cocktail on [his] lawn," and "shot at [him] in broad daylight." *Id.* ¶ 12. Those events caused plaintiff to resign from Prestex in March 1981. *Ibid.*

Plaintiff was arrested on May 15, 1981, and "was forced to sign a confession in English that [he] . . . did not understand." *Id.* ¶¶ 13, 15. It seems that plaintiff was accused of stealing

---

[2] While plaintiff's filing at Docket No. 23 is styled as a paper "in support of final [summary judgment]," the document responds to defendants' motion to dismiss arguments and appears to clarify factual allegations made in plaintiff's other filings. *See, e.g.*, Pl.'s Mot. for Summ. J. 14. Accordingly, for purposes of this Order, the Court construes plaintiff's motion for summary judgment as part of plaintiff's oppositions to the motions to dismiss.

money from Prestex by diverting company funds into his private accounts. *See id.* ¶ 26; Mem. in Supp. of Compl. 24. Plaintiff was eventually tried and convicted of grand larceny, forgery, and possession of a forged instrument. *See* Am. Aff. ¶¶ 46-47. Plaintiff served seven years in prison and "was released (or paroled) on May 16, 1988." *Id.* ¶ 47.

Plaintiff challenged his conviction on direct appeal, through a petition for a writ of habeas corpus filed in federal district court in 1982, and through collateral attacks in state court. *See* Am. Aff. ¶¶ 53, 55-58. Plaintiff's most recent attempt to obtain post-conviction relief under New York Criminal Procedure Law § 440.10 was denied by the Supreme Court of the State of New York in September 2019, and the New York Appellate Division denied plaintiff leave to appeal in January 2021. *See* Am. Aff. ¶¶ 71, 73.

Plaintiff alleges that he was deprived of his constitutional rights after his arrest, during the subsequent prosecution and trial, and on direct appeal. *See, e.g.*, *id.* ¶¶ 13-27, 50; Mem. in Supp. of Compl. 33. Plaintiff also argues that New York lacked jurisdiction over his conduct. *See* Mem. in Supp. of Compl. 52 (citing 18 U.S.C. § 641). In addition, plaintiff appears to allege that his conviction was the result of a fraudulent financial statement prepared by Gurwin. *See* Pl.'s Letter dated Aug. 31, 2021 at 5 (Dkt. #21).

After plaintiff was arrested, Prestex and Gurwin filed a civil suit against plaintiff. *See* Am. Aff ¶ 28; Pl.'s Letter dated Aug. 31, 2021 at 3 (stating that Gurwin commenced a civil action). Prestex alleged that plaintiff stole millions of dollars from Prestex and used that money to buy two residential properties. *See* Mem. in Supp. of Compl. 10. Federal reimbursed Prestex for $1,000,000 and assumed Prestex's right to sue plaintiff. *See id.* at 11, 23. Federal then moved for summary judgment, and Gurwin submitted an affidavit in support of Federal's motion. *See id.* at 28. The state court granted summary judgment for Federal. *See id.* at 29.

3

Plaintiff suggests that Federal submitted a "[f]raudulent [f]inancial [s]tatement . . . in the civil case." *Id.* at 32.

On April 7, 2021, plaintiff filed this suit in the Southern District of New York. *See* Compl. (Dkt. #1). The case was transferred to this district on April 12, 2021. *See* Transfer Order (Dkt. #3). Plaintiff filed an amended complaint on June 8, 2021. *See* Am. Compl.

Plaintiff asks the Court to order New York and Nassau County "to vacate" plaintiff's conviction. Mem. in Supp. of Compl. 2; *see id.* at 53 (seeking order directed at James and Donnelly "to dismiss the [c]onviction and declare [p]laintiff [not guilty]"). Plaintiff also seeks damages for what he describes as "illegal incarceration" from New York and Nassau County, as well as from the Gurwin Estate and Federal. *Id.* at 53, 54; *see id.* at 2   Plaintiff also appears to ask the Court to direct the sale of certain property controlled by the Gurwin Estate. Pl.'s Letter dated Aug. 31, 2021 at 5.

In addition, plaintiff invokes this Court's jurisdiction to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State court." 28 U.S.C. § 2254(a); *see* Resp. to Donnelly Mot. to Dismiss 7; Pl.'s Mot. for Summ. J.

Defendants James, Donnelly, and Federal filed motions to dismiss on the grounds that this Court lacks subject-matter jurisdiction and the complaint fails to state a claim. *See* James Mot. to Dismiss; Donnelly Mot. to Dismiss; Federal Mot. to Dismiss. Plaintiff then filed a motion for summary judgment against New York, Nassau County, and Federal and a motion for default judgment against the Gurwin Estate. *See* Pl.'s Mot. for Summ. J. 1.

On January 25, 2022, the Court issued an order advising plaintiff that the Court was prepared to *sua sponte* dismiss all claims against the Gurwin Estate and plaintiff's claim under 18 U.S.C. § 641 as to all defendants. *See* Order dated Jan. 25, 2022. The Court gave plaintiff an

opportunity to file a memorandum responding to the potential grounds for dismissal. *See ibid.* Plaintiff filed a timely response. *See* Pl.'s Mem. dated Feb. 22, 2022 (Dkt. #27).

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must show that the Court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion, the court "must take all facts alleged in the complaint as true." *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alteration omitted) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at

5

558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When a plaintiff is proceeding pro se, the complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the plaintiff should be given an opportunity to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999) (per curiam)); *see Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

**DISCUSSION**

**I.**     **Habeas Corpus Claim**

Plaintiff appears to ask for the Court to construe the complaint as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Resp. to Donnelly Mot. 7. But this Court does not have jurisdiction over such a petition because plaintiff has not adequately alleged that he is in custody. *See* Donnelly Mem. in Supp. of Mot. to Dismiss 5 (Dkt. #17-1) ("Donnelly Mem.").

"In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time the petition is filed." *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017) (quoting 28 U.S.C. § 2254(a)). A petitioner need not be in "actual, physical custody" to satisfy the custody requirement. *Ibid.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963)). "[A] significant restraint upon [petitioner's] physical liberty 'not shared by the public generally'" can count as custody for purposes for Section 2254. *Ibid.* (quoting *Cunningham*, 371 U.S. at 240). Accordingly, a petitioner on parole under an unexpired sentence is "in custody," while a petitioner whose

sentence has fully expired is generally not. *See Maleng v. Cook*, 490 U.S. 488, 491-92 (1989). And once a sentence has expired, "the collateral consequences of that conviction are not themselves sufficient to render an individual in custody." *Id.* at 492 (internal quotation marks omitted).

Plaintiff does not appear to have filed his petition while he was "in custody." 28 U.S.C. § 2254(a). Plaintiff alleges that he was released on parole in 1988, about thirty-four years ago. And plaintiff does not suggest that he was still on parole when he filed this case in 2021. Mem. in Supp. of Compl. 37-38; *see Minus v. New York*, No. 15-CV-1547 (PGG), 2019 WL 2022069, at *2 (S.D.N.Y. May 7, 2019) (finding it "reasonable to assume" given petitioner's release seven years prior to date petition was filed that parole would have expired). Although plaintiff claims that he lost "everything he had worked for and built" after being incarcerated, Mem. in Supp. of Compl. 2-A , that statement alleges, at most, collateral consequences of his conviction that do not render him "in custody" under Section 2254. Because the petition does not meet the jurisdictional requirements of Section 2254, the petition is denied without prejudice.

**II.** **Claim for Injunctive Relief**

Donnelly's motion to dismiss plaintiff's claim for injunctive relief for lack of subject-matter jurisdiction is granted. *See* Donnelly Mot. to Dismiss 5-6.

Plaintiff's request for an injunction directing certain defendants to dismiss plaintiff's conviction and declare him not guilty is barred by the *Rooker-Feldman* doctrine. *See, e.g.*, Mem. in Supp. of Compl. 53. That doctrine establishes "that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). But it is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In contrast, it does not bar a plaintiff from "present[ing an] independent claim . . . that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 293 (citation omitted). Accordingly, for a claim to be barred, "four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho*, 910 F.3d at 645 (citing *Hoblock*, 422 F.3d at 85). These limitations are stringent enough that one court of appeals recently advised district courts to "keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

This is one of those rare cases in which *Rooker-Feldman* does bar claims brought in federal court. The first and fourth *Rooker-Feldman* requirements are met because plaintiff lost his state criminal case in 1982. *See* Am. Aff. ¶ 47. As to the second requirement, plaintiff's alleged injuries appear to be financial harm caused by his state criminal conviction. *See* Am. Compl. 4 ("Relief"); Mem. in Supp. of Compl. 2-A. Finally, regarding the third requirement, an injunction ordering the dismissal of the criminal conviction and a declaration that plaintiff is not guilty would require district court review and rejection of the state court judgment of plaintiff's guilt. Courts in this circuit have found the *Rooker-Feldman* requirements satisfied under similar circumstances. *See Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 705-06 (S.D.N.Y. 2011) (finding no subject-matter jurisdiction under *Rooker-Feldman*, where plaintiff requested to "void . . . conviction entered by . . . state courts"); *Schafer v. Coyne*, No. 12-CV-40 (RJA) (JJM),

8

2017 WL 975895, at *3 (W.D.N.Y. Mar. 14, 2017) (finding *Rooker-Feldman* applied even where complaint did "not expressly seek . . . reversal of . . . state court conviction" but rather alleged that plaintiff "was wrongly convicted because of defendants' conduct"); *see also Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (explaining that while *Rooker-Feldman* "does not preclude a [Section] 1983 action . . . against a state official who violates a plaintiff's constitutional rights[,] . . . . [t]o the extent that [plaintiff] only seeks a declaration that his state conviction is invalid, he seeks nothing more than review of a state court judgment").

For those reasons, plaintiff's claim for injunctive relief amounts to an appeal from a state court judgment. That claim is therefore dismissed under *Rooker-Feldman* for lack of subject-matter jurisdiction.

### III. Claims Against New York

Plaintiff's claims against New York and against James in her official capacity as Attorney General for money damages are barred by sovereign immunity. Even if *Rooker-Feldman* did not bar plaintiff's claim for injunctive relief, that claim would also be barred by sovereign immunity as to New York and James in her official capacity.

State governments may not be sued in federal courts by private parties "unless they have waived their Eleventh Amendment immunity or unless Congress" has abrogated it. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotations and citations omitted); *see Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011). And when a private party sues a state government employee "for damages in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). No waiver or abrogation of sovereign immunity has occurred here. *See Li v. Lorenzo*, 712 F.

9

App'x 21, 22 (2d Cir. 2017) (summary order). Accordingly, plaintiff's claims against New York and for money damages against James in her official capacity are dismissed.

The Eleventh Amendment also bars plaintiff's claim for injunctive relief against James. Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in [her] official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)). But plaintiff does not allege an "ongoing violation of federal law" that could be remedied through prospective injunctive relief. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Instead, plaintiff seeks to vacate a state criminal judgment entered against him decades ago. *See United Mexican States v. Woods*, 126 F.3d 1220, 1223 (9th Cir. 1997) (rejecting argument that challenges to validity of a criminal conviction "can give rise to prospective relief under *Ex parte Young*" because while a conviction can be "examined *post hoc* in state post-conviction proceedings and federal habeas," they cannot "be examined in a prospective fashion"); *see Republic of Paraguay v. Allen*, 134 F.3d 622, 629 (4th Cir. 1998) (applying *Woods*). Since plaintiff cannot reply on *Ex parte Young* to obtain the retrospective injunctive relief that he seeks, plaintiff's claim for an injunction against James in her official capacity is dismissed.

## IV. Claims Against Nassau County

Donnelly's motion to dismiss plaintiff's Section 1983 claims against Donnelly in her official capacity and claims against Nassau County for failure to state a claim is granted.[3] Even

---

[3] Plaintiff's responsive papers clarify that his claims should be construed as against Nassau County. *See* Resp. to Donnelly Mot. to Dismiss 2 (asserting plaintiff does not sue Donnelly "in her [personal capacity]" and instead brings claims against Nassau County); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a

assuming that this Court has jurisdiction over plaintiff's claim for injunctive relief, all of plaintiff's Section 1983 claims against Nassau County fail because plaintiff has not adequately pleaded an official policy or custom that caused plaintiff to be deprived of his rights. *See* Donnelly Mot. to Dismiss at 10-11.

A municipality such as Nassau County can be liable under Section 1983 only if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). Municipalities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick*, 563 U.S. at 60 (citation omitted). A plaintiff who seeks to hold a municipality liable under Section 1983 must allege (i) "an official policy or custom," that (ii) "cause[d] the plaintiff to be subjected to," (iii) a "denial" of a federally guaranteed right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick*, 563 U.S. at 61 (citations omitted). *Monell* applies regardless of whether a plaintiff seeks monetary damages or "prospective relief, such as an injunction or a declaratory judgment." *L.A. County v. Humphries*, 562 U.S. 29, 31 (2010).

Here, plaintiff has not alleged an official policy or custom on the part of Nassau County that caused him to be deprived of his federal rights. Plaintiff alleges that a homicide detective arrested plaintiff without a warrant and took other actions that violated plaintiff's rights. *See*

---

need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief.")

11

Am. Aff. ¶¶ 13-15, 21. But isolated acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

Plaintiff's allegations of "improper conduct by the prosecution" in his case, Mem. in Supp. of Compl. 49, are similarly inadequate. Plaintiff accuses prosecutors of "introducing false evidence and potential [*Brady*] violations," *ibid.*, and he asserts that the prosecution "always tried to mislead the court," *id.* at 31; *see id.* at 15-16. But plaintiff does not specify what false evidence the prosecution introduced or what *Brady* material the prosecution withheld. Without additional factual detail, these statements amount to conclusory allegations that are insufficient to survive a motion to dismiss. In any event, plaintiff does not allege that prosecutors misled the court, introduced false evidence, or withheld *Brady* material pursuant to an official policy or custom. *Cf. Bellamy v. City of New York*, 914 F.3d 727, 757 (2d Cir. 2019) (holding that *Monell* claim was properly brought against City of New York for actions of county prosecutors where plaintiff had alleged two relevant policies, an "information barrier" and a "failure to discipline summation misconduct"); *O'Hara v. City of New York*, No. 17-CV-4766, 2019 WL 2326040, at *9 (E.D.N.Y. May 31, 2019) (denying motion to dismiss *Monell* claim where plaintiff alleged a District Attorney acted as a policymaker and maintained an unlawful policy and where the complaint "provide[d] many specific examples supporting those allegations"), *mot. for reconsideration granted on other grounds*, 2020 WL 8881554 (E.D.N.Y. Apr. 21, 2020).

Because plaintiff has not stated a *Monell* claim, plaintiff's Section 1983 claims against Nassau County are dismissed.

12


## V.     Claims Against Federal Insurance Company

Federal's motion to dismiss plaintiff's claims against it on the basis that plaintiff fails to allege that Federal acted under color of state law is granted.[4] *See* Mem. in Supp. of Federal Mot. to Dismiss 8 (Dkt. #22-1) ("Federal Mem.").

Section 1983 permits suit against any person who deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, "[w]hen Congress enacted [Section] 1983 as the statutory remedy for violations of the Constitution, it specified that the conduct at issue must have occurred 'under color of' state law." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988); *see Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263-64 (2d Cir. 2014). As a result, suits may only be brought against private individuals "if, [and] only if," a "close nexus [exists] between the State and the challenged action." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quotation marks and citation omitted). Plaintiff alleges no such nexus. Instead, plaintiff merely alleges that Federal participated in civil litigation against him and prepared a fraudulent financial statement. *See* Mem. in Supp. of Compl. 23, 32. Nothing in the complaint indicates that Federal bore any relationship to the state, or that Federal's actions "may be fairly treated as that of the State itself." *Brentwood Acad.*, 531 U.S. at 295 (citation omitted). And plaintiff's allegation in his response to the Court's January 25 Order that Federal was "endowed by the [s]tate with powers or functions governmental in nature and [became an] instrument of the [s]tate," Pl.'s Mem. dated Feb. 22, 2022 at 2, is a "mere conclusory

---

[4] Federal construes the complaint as seeking to overturn a summary judgment decision that Federal won in a state court civil case. *See* Federal Mot. to Dismiss 5-6. Federal moves to dismiss that claim for lack of subject-matter jurisdiction under *Rooker-Feldman*. *See ibid.* But as Federal admits, plaintiff does not indicate in the pleadings that he intends to overturn that state court decision. *See ibid.* Since the pleadings cannot be fairly construed to raise such a claim, I decline to resolve Federal's *Rooker-Feldman* argument.

statement[]" that cannot alone plead a Section 1983 claim, *Iqbal*, 556 U.S. at 678; *see Peterec-Tolino v. Ace Am. Ins. Co.*, No. 20-CV-5345 (LLS), 2020 WL 5211045, at *5 (S.D.N.Y. Aug. 28, 2020) (finding allegations that insurance company provided insurance payments and sought recovery for payments insufficient to plead a close nexus). Accordingly, plaintiff's Section 1983 claims against Federal are dismissed.

## VI. Claims Against Gurwin Estate

Plaintiff has moved for a default judgment against the Gurwin Estate, which has not appeared in this action. *See* Pl.'s Mot. for Summ. J. 1. But a party moving for default judgment is not automatically entitled to such a judgment. Assuming that the other requirements of Federal Rule of Civil Procedure 55 have been met, a court must determine whether the moving party's allegations "establish [the defaulting party's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Although the Gurwin Estate has not answered the complaint or filed a motion to dismiss, the allegations against that defendant are insufficient to state a claim for substantially the same reasons as applied to the claims against Federal. Plaintiff does not allege that a close nexus existed between the Gurwins and the state such that the Gurwins acted under color of state law. *See Brentwood Acad.*, 531 U.S. at 295 (citation omitted). Plaintiff alleges that Gurwin participated in civil litigation against him, colluded with Federal, and prepared a fraudulent financial statement. *See* Mem. in Supp. of Compl. 11-12, 21-22; Pl.'s Letter dated Aug. 31, 2021 at 3. Those allegations do not establish that Gurwin had a close nexus with the state. Nor does the fact that Gurwin cooperated with the state's investigation and prosecution of plaintiff by providing the state with documents mean that a close nexus linked Gurwin and the state. Pl.'s Mem. dated Feb. 22, 2022 1; *see Levine v. City of New York*, No. 12-CV-3653 (KAM) (RML), 2014 WL 3778748, at *5 (E.D.N.Y. July 31, 2014) (adopting report and recommendation). And

as I explained above, plaintiff's conclusory allegation that Gurwin was given governmental powers and became "an instrument of the [s]tate," Pl.'s Mem. dated Feb. 22, 2022 at 2, is insufficient to plead a Section 1983 claim. Therefore, plaintiff's Section 1983 claim is dismissed.

### VII. Section 641 Claim

Plaintiff also invokes 18 U.S.C. § 641 in the complaint, but that statute does not provide a cause of action for plaintiff's claim. "Section 641 criminalizes embezzlement of public funds" and "provides no basis for civil liability." *Bell v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, No. 17-CV-937, 2019 WL 1305809, at *12 (N.D.N.Y. Mar. 22, 2019) (collecting cases). Plaintiff offers no alternative explanation as to how Section 641 could apply in this case. *See* Pl.'s Mem. dated Feb. 22, 2022. Therefore, to the extent that plaintiff intends to bring a claim under Section 641, the Court *sua sponte* dismisses that claim as to all defendants.

### VIII. State-Law Claims

To the extent that plaintiff's complaint could be construed to raise any state-law claims, the Court sees no basis for diversity jurisdiction and declines to exercise supplemental jurisdiction over them. *See, e.g.*, Resp. to James Mot. to Dismiss 2 (asking the Court "to remand [j]urisdiction to viable [s]tate [l]aw claims").

Plaintiff appears to assert a basis in diversity jurisdiction against Federal. *See* Am. Compl. 3. Complete diversity as required by 28 U.S.C. § 1332 must "be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (citation omitted). "[A] statement of the parties' residence is insufficient to establish their citizenship." *Ibid.* For complete diversity to be satisfied, no plaintiff can share citizenship with any defendant. *See ibid.* Plaintiff has not filled out the section of the form complaint alleging his own

15

citizenship or the citizenship of any party other than Federal. I have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and I cannot conclude that complete diversity exists in this case such that I would have diversity jurisdiction over the action.

James argues that the Court should decline to exercise supplemental jurisdiction over remaining state law claims. *See* Mem. in Supp. of James Mot. to Dismiss 6 (Dkt. #12-1). I agree. Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Those factors would counsel in favor of dismissing plaintiff's state-law claims in the event that his federal claims are dismissed. This case is still in its preliminary stages. The action has not passed beyond the pleading stage, and it would be at least as convenient and fair for the parties to litigate plaintiff's state-law claims in state court. Indeed, "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006); *see Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010). Since all of plaintiff's federal law claims have been dismissed, I decline to exercise supplemental jurisdiction over any state-law claims that plaintiff asserts.

## CONCLUSION

All of plaintiff's federal-law claims against New York, James in her official capacity, Donnelly in her official capacity, Nassau County, and Federal are dismissed. I *sua sponte* dismiss plaintiff's Section 641 claim and claims against the Gurwin Estate, and I decline to exercise supplemental jurisdiction over any remaining state-law claims. Plaintiff may file an

amended complaint within thirty days of this Order correcting the deficiencies identified in this Order. All proceedings in this case are stayed for thirty days. If plaintiff fails to file an amended complaint, the case will be dismissed. I certify under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore deny *in forma pauperis* status for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

    SO ORDERED.

                                    */s/ Rachel Kovner*
                                    RACHEL P. KOVNER
                                    United States District Judge

Dated: March 17, 2022
       Brooklyn, New York